IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
ROBERT PHILLIP DENDY,         )
                              )
     Plaintiff,               )
                              )          CIVIL ACTION NO.
     v.                       )            2:10cv459-MHT
                              )                (WO)
DECKER TRUCK LINE, INC.,      )
                              )
     Defendant.               )
```

OPINION AND ORDER

Plaintiff Robert Phillip Dendy brings federal claims against defendant Decker Truck Line, Inc., for discrimination and retaliation under the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12112 - 12117), discrimination under the Age Discrimination in Employment Act (ADEA) (29 U.S.C. §§ 621 - 634), and interference and retaliation under the Family and Medical Leave Act (FMLA) (29 U.S.C. §§ 2601 - 2654).  Dendy also brings state claims against Decker Truck for discrimination under the Alabama Age Discrimination in Employment Act (AADEA) (1975 Ala. Code §§ 25-1-20 through 25-1-29), and for

negligence and wantonness in general as well as negligent-and-wanton supervision and training under Alabama common law.

The case is now before the court on Decker Truck's motion to transfer this lawsuit to either the United States District Court for the Northern District of Alabama or the United States District Court for the Northern District of Iowa. For the reasons that follow, the motion will be granted in that the lawsuit will be transferred to the Northern District of Alabama.

## I. BACKGROUND

Dendy worked as an over-the-road truck driver for Decker Truck. In September 2008, he was given an EKG during a physical and the results showed an abnormal reading. He had a follow-up appointment with James S. Lee, M.D., a cardiologist who practices in Cullman, Alabama. Dr. Lee determined that Dendy needed triple by-pass surgery, and Dendy had the heart surgery at the

2

University of Alabama at Birmingham Medical Center in Birmingham, Alabama.

Dendy requested and received a 12-week FMLA leave for the period of September 4 through November 27, 2008.  On November 26, Dr. Lee provided Dendy with a full medical release and told him he was clear to return to work without restrictions.  Dendy states that his wife called Decker Truck that day to provide this information, and that the company requested that Dr. Lee forward the medical release to a company doctor on the following Monday, December 1, due to the Thanksgiving holidays.  On December 1, Dr. Lee forwarded Dendy's medical information to the company doctor.  Dendy asserts that the company doctor called him on December 2, and said that she saw no problems with his medical paperwork, but that she was not sure how the company would respond to the fact that he would need to wear a heart monitor for 30 days.

On December 3, Decker Truck terminated Dendy's employment.  According to Dendy, the company stated that

his termination was based on his failure to return to work prior to the expiration of his medical leave, but Dendy alleges that he had presented a full medical release prior to the expiration of his leave, and that Decker Truck knew he was ready, willing, and able to return to his regular job.  Dendy also contends that after he challenged his dismissal and requested an extension of his leave if necessary, the company retaliated against him in several different ways.  For example, he alleges that the company refused to reinstate him to his former position; refused to extend his leave; attempted to deny him unemployment benefits based on knowingly false information; and did not pay him a bonus that was due to him.

## II.  DISCUSSION

### A.  Standard for Motion to Transfer

28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." Because federal courts normally accord deference to a plaintiff's choice of forum in a § 1404 motion, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). The district court has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988), and a court faced with a motion to transfer must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). A district court may properly transfer a case to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be [easiest, and] most expeditious and inexpensive." C.M.B. Foods, Inc. v.

Corral of Middle Ga., 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (Thompson, J.) (alteration in original).

Resolution of a § 1404(a) motion requires a two-step process. First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," Folkes v. Haley, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999) (DeMent, J.). Then, the court must determine whether the action should be transferred "for the convenience of the parties [and] in the interest of justice."  Id.

### B. Propriety of Transferee District

On a § 1404(a) motion, the court first must ask whether the proposed transferee districts, the Northern District of Alabama and the Northern District of Iowa, are districts where the action originally "might have been brought."  Pursuant to 28 U.S.C. § 1391(a), venue is proper "(1) in a judicial district where any defendant resides, if all the defendants reside in the same

State[.]"  Under 28 U.S.C. § 1391(c), a "corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time that the action is commenced[.]"  Decker Truck is the only defendant and was subject to personal jurisdiction at the time that the action was commenced in both the Northern District of Alabama (where the company maintains a terminal) and the Northern District of Iowa (where the company has its headquarters).  Both districts, therefore, are appropriate transferee districts.

        C.  Balance of Justice and Convenience

The court must next consider whether the balance of justice and convenience favors transfer.  Factors to consider when making this determination include:

> "(1) the convenience of the witnesses;
> (2) the location of relevant documents
> and the relative ease of access to
> sources of proof; (3) the convenience of
> the parties; (4) the locus of operative
> facts; (5) the availability of process
> to compel the attendance of unwilling
> witnesses; (6) the relative means of the

7

>     parties; (7) a forum's familiarity with
>     the governing law; (8) the weight
>     accorded a plaintiff's choice of forum;
>     and (9) trial efficiency and the
>     interests of justice, based on the
>     totality of the circumstances."

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005). Also, "when the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."  Gould v. National Life Insurance Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (Albritton, J.) (internal quotations omitted).

As an initial matter, this court denies Decker Truck's motion to transfer this lawsuit to the Northern District of Iowa.  It is evident that this transfer would pose a significant financial hardship to Dendy, given that he is an individual with limited resources.  Thus, it would be neither just nor convenient to transfer the lawsuit to that district.

In contrast, the balance of justice and convenience militates in favor of transferring this case to the

Northern District of Alabama. First, most of the critical, operative facts in this case occurred in the Northern District while none occurred in the Middle District. Dendy is challenging a number of Decker Truck's decisions concerning his employment. These decisions were all made by Decker Truck employees in either Birmingham, in the Northern District, or in Fort Dodge, Iowa.

Second, several material witnesses are located in the Northern District. Dendy himself resides in Arab, Alabama, a city in the Northern District that is about 70 miles north of Birmingham,[1] and many of the witnesses from Decker Truck who would testify in this case are located in Birmingham, Alabama, Decker Truck's only Alabama terminal.[2] In addition, several potential non-party witnesses are also located in the Northern District. For

---

1. Arab is about 160 miles north of Montgomery. Birmingham, therefore, lies between Arab and Montgomery.

2. The other witnesses from Decker Truck who might testify are located in Fort Dodge, Iowa.

instance, Dr. Lee practices medicine in Cullman, Alabama, which is located about 50 miles north of Birmingham, and Dendy's wife lives with Dendy in Arab.

Third, and finally, many of the documents to be produced will come from the Northern District, while few, if any, will come from the Middle District.  For example, many of the records relating to Dendy's employment with Decker Truck are located at the Decker Truck terminal in Birmingham.³  Similarly, many documents to be produced by Dendy's medical providers are also located in the Northern District.  As noted above, Dr. Lee practices medicine in Cullman, and Dendy underwent heart surgery at a medical center in Birmingham.  This court recognizes that advances in technology have made it easier to transmit documentary evidence.  See Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) (Heartfield, J.) (noting that access to documents has

---

3. The remaining documents relating to Dendy's employment with Decker Truck are located at its corporate headquarters in Fort Dodge, Iowa.

"been given decreasing emphasis due to advances in copying technology and information storage"). Nonetheless, the fact "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." In re Volkswagen of Am., Inc., 545 F.3d 304, 316 (5th Cir. 2008). Accordingly, this factor provides some additional weight in favor of transfer.

Arguing against these factors, Dendy contends that his choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). The normal heft of Dendy's choice is lessened in this case, however. Because the Middle District is not Dendy's "home forum," the "presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is then less reasonable." Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430 (2007).

Denby also argues that it would be inconvenient for him to travel to Birmingham.  He asserts that, due to his financial circumstances, he is particularly concerned about the cost of litigation and that it is less expensive for him to meet with his attorney in Montgomery as opposed to paying his attorney to meet with him in his home.  Although courts generally consider a party's "financial ability to bear the cost of the change" when determining whether the balance of justice and convenience favors transfer, <u>Lasalle Bank N.A. v. Mobil Hotel Properties, LLC</u>, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003) (Granade, J.), this court is not persuaded by Denby's argument.  Even if this court transfers this lawsuit to the Northern District, Denby can continue to meet with his attorney in Montgomery.

On a related note, Dendy also argues that this court should consider the fact that his counsel's law office is in the Middle District, and that it would thus be less expensive for Dendy to try his case here rather than in

the Northern District.  In this case, however, transfer to the Northern District is unlikely to cause a significant increase in Dendy's litigation costs, given its proximity to the Middle District and the fact that most of the critical evidence is in the Northern District.

Finally, this court recognizes that Dendy has two potential witnesses who, if they testified, would find it more convenient to appear in this court.  One of these witnesses, a former co-worker who might testify to the manner in which Decker Truck handled his own health problems, lives in Brundidge, Alabama, about 40 miles south of Montgomery.  The other witness, a relative with whom Dendy shared his concerns when the company's actions and omissions were allegedly taking place, lives in Mobile, Alabama, in the Southern District of Alabama. Nonetheless, the court concludes that the locus of operative facts occurred outside this district and that most of the essential witnesses and documents to be

produced are located in the Northern District of Alabama, while few, if any, are located in this District.

***

Accordingly, for the foregoing reasons, it is the ORDER, JUDGMENT, and DECREE of the court that defendant Decker Truck Line, Inc.'s motion to transfer venue (doc. no. 6) is granted and this lawsuit is transferred in its entirety to the United States District Court for the Northern District of Alabama.

The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.

DONE, this the 26th day of August, 2010.

                                        /s/ Myron H. Thompson
                             UNITED STATES DISTRICT JUDGE